1

2

3

4

5

6           UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
7                   AT SEATTLE

8  GAIL E. DAVIS,

9                      Plaintiff,          CASE NO. C15-0209-JLR-MAT

10        v.

11 CAROLYN W. COLVIN, Acting               REPORT AND RECOMMENDATION RE:
   Commissioner of Social Security,        SOCIAL SECURITY SURVIVOR
                                           BENEFIT APPEAL
12                     Defendant.

13

14        Plaintiff Gail Davis proceeds through counsel in her appeal of a final decision of the

15 Commissioner of the Social Security Administration (Commissioner).  The Commissioner

16 denied plaintiff's application for Social Security survivor's benefit for the mother of a disabled

17 child after a hearing before an Administrative Law Judge (ALJ).  Having considered the ALJ's

18 decision, the administrative record (AR), and all memoranda of record, the Court recommends

19 that this matter be REVERSED and REMANDED for further proceedings.

20                    **FACTS AND PROCEDURAL HISTORY**

21        Plaintiff is the mother of a disabled adult.  In 1993, her son, Edward Frank Fields,[1] was

22 found disabled and awarded benefits under Title XVI retroactively to 1982.  (AR 17, 45.)  In

23
   _____
        [1] Edward Frank Fields goes by "Frank," and he will be referred to as Frank for the remainder of the report
   and recommendation.

REPORT AND RECOMMENDATION
PAGE - 1

2005, the benefits were amended and properly awarded under the child survivor provisions of Title II based on his father's Social Security account.  (AR 17, 45.)  Plaintiff filed this application for mother's benefits on July 22, 2008.  (AR 24.)  Her application was approved for receipt of benefits as of December 2007, the permitted six months prior to filing.  20 C.F.R. § 404.621(a)(2).

Despite receiving benefits, plaintiff filed a request for reconsideration.  (AR 29-31.)  She argued that her benefits should have begun as early as 1983 because she had been caring for her son since divorcing his father that year.  (AR 29-31.)  The reconsideration was denied.  (AR 38-39.)  Plaintiff requested a hearing before an ALJ.  (AR 43.)

On March 13, 2012, ALJ Michael Gilbert held a hearing at which plaintiff appeared without counsel.  (AR 115-34.)  After significant discussion, the ALJ postponed the hearing so plaintiff could seek representation.  (AR 132.)  The second hearing occurred on August 2, 2012 and plaintiff again appeared without counsel.  (AR 137-80.)  She chose to waive her right to representation and continue with the proceedings.  (AR 138, 177.)  The ALJ took testimony from both plaintiff and her son.  On November 29, 2012, the ALJ issued a decision finding that plaintiff was not entitled to mother's benefits.  (AR 16-19.)

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on August 12, 2014 (AR 5-8), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Social Security Act allows for payment of benefits to a surviving divorced wife on

REPORT AND RECOMMENDATION
PAGE - 2

the earnings record of someone who was insured at death.  20 C.F.R. § 404.340.   In this case, plaintiff is entitled to benefits if (1) she was validly married or divorced from the insured, (2) she is the mother of the insured's child, (3) is unmarried, and (4) she has in her care the insured's child who is under age 16 or disabled and entitled to child's benefits on the insured's record.  20 C.F.R. § 404.340.   As it applies to this case, a child is considered in a parent's care unless he is 16 years old or older with a mental disability and the parent does not actively supervise his activities or make important decisions about his needs. 20 C.F.R. § 404.348(b)-(c).  Factors indicating that a child is "in care" include the exercise of parental control and responsibility, supervision of the child's activities, and participation in the important decisions about the child's physical and mental needs.  POMS RS 01310.035.

The ALJ determined that plaintiff had been finally divorced from the wage earner, and that their child Frank had been previously found disabled under the Social Security regulations. However, the ALJ found that plaintiff did not exercise the level of parental supervision envisioned under the regulations and Frank was not a "child in care" for the relevant period at issue.  (AR 17, 19.)  As a result of this finding, plaintiff was no longer eligible for mother's benefits.  (AR 19.)

On appeal, plaintiff submitted additional evidence to the Appeals Council in support of her claim that her adult son was in her care as contemplated by 20 C.F.R. § 404.340.  This evidence consisted of a lengthy letter detailing the ways in which she makes decisions for and supervises her son.  (AR 100-10.)  The Appeals Council reviewed this evidence, which became part of the record.  (AR 8.).  Despite this new evidence, the Appeals Council found no basis for changing the ALJ decision and denied request for review.  (AR 5-6.)  Plaintiff appeals this decision, arguing that newly submitted evidence shows that she provides the required level of

REPORT AND RECOMMENDATION
PAGE - 3

1    parental control, supervision and decision making.

2        This Court's review of the ALJ's decision is limited to whether the decision is in

3    accordance with the law and the findings supported by substantial evidence in the record as a

4    whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

5    than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

6    mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747,

7    750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the

8    ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954

9    (9th Cir. 2002).

10                                New Evidence of "Child in Care"

11        Plaintiff argues that the case should be remanded for consideration of this additional

12   evidence.  Dkt. 14 at 7.  The Commissioner agrees that the new evidence before the Appeals

13   Committee became part of the administrative record and must be considered by the Court.  *See*

14   *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).   However, the

15   Commissioner disagrees that the evidence undermines the substantial evidence supporting the

16   ALJ's decision.  Dkt. 20 at 8.

17        The ALJ cited several reasons that plaintiff's son was not a "child in care" based on

18   testimony provided during the hearing.  According to the ALJ, plaintiff does not supervise or

19   make important decisions for her son because Frank decides his daily activities by himself, has a

20   driver's license and car, does his own laundry, cooks for himself and his mother, handles his own

21   food stamps and shopping, accesses his money through ATMs, "stays by himself," and attends

22   medical appointments without his mother.  (AR 18-19.)  Plaintiff's letter attempts to refute these

23   findings and show that she actively supervises Frank's activities and makes important decisions

REPORT AND RECOMMENDATION
PAGE - 4

about his needs.  *See* 20 C.F.R. § 404.348(c).

The ALJ first noted that Frank decides on his own daily activities.   Plaintiff acknowledges that Frank makes his own decisions as to where he wants to go because he is 51 years old and "despite his disability, he is intelligent and with some assistance is able to make such decisions." (AR 107.)  However, plaintiff wrote that she will point out things that may pose a problem for him during his chosen activities and Frank may then change his mind.  As a result, plaintiff contends that although Frank makes his own decisions, she monitors his activities.  (AR 107.)  Frank's testimony supports the important role that plaintiff plays in his daily life.   Frank testified that when he goes anywhere he asks plaintiff "to keep her line clear, to make sure her phone is on, because I get lost." (AR 169.)

Although Frank has his own vehicle and driver's license, plaintiff stated that it took her five years to successfully teach him how to safely put gas in the car.  (AR 103.)  She wrote that she makes sure he has his wallet and license when he goes out, reminds and accompanies him to renew his license, and takes care of maintenance on the vehicle.  (AR 103.)  She makes all decisions about insurance.  (AR 106.)

Although plaintiff is not Frank's official payee for his Social Security benefits, Frank testified that his mother takes care of all of his "business," including his bills.  (AR 103, 154, 167.)  Plaintiff's letter clarifies that in addition to paying Frank's bills she handles insurance decisions and the phone calls when Frank needs to give or receive information, order something, or give instructions or directions.  (AR 105-106.)  Frank can use an ATM to access his money, but plaintiff wrote that this took "a number of years." (AR 107.)  Then, the buttons on the ATM moved to accommodate additional functionality and plaintiff had to teach him all over again. (AR 107.)  Furthermore, Frank can only use Bank of America ATMs and can only take out cash.

REPORT AND RECOMMENDATION
PAGE - 5

1    (AR 107.)  He cannot make a deposit using the machines.  (AR 107.)

2        Frank testified that after ruining a lot of clothes, he can now do his own laundry after

3    speaking to his mother about separating the colors.  (AR 176.)  According to plaintiff, Frank has

4    difficulty operating the washer and dryer without her assistance so he frequently scrubs parts of

5    his shirts and pants by hand.  (AR 103-104).  Plaintiff decides when and what clothing needs to

6    be washed and does the majority of the wash using the machine.  (AR 104.)

7        Like his laundry, Frank needs support with grocery shopping.  At the hearing Plaintiff

8    testified that he can shop and handle his food stamps because she helped him learn how to buy

9    "staples."  (AR 154.)  Her letter clarifies that when he shops, she must always be on "standby" so

10   he can call her for assistance.  (AR 104.)  Frank's testimony supports his mother's claim.  "I try

11   to take her shopping with me and if she can't go, I ask her to keep her line clear…To make sure

12   I'm getting everything that I need and at the counter and stuff, when the prices come up, you

13   know, but—because I'm terrible with math."   (AR 173.)  He can do his shopping with "standby"

14   assistance from his mother.

15       Plaintiff has taught Frank to cook certain foods, but her letter describes his need for

16   repetitive direction, correction, demonstration, and support.  (AR 104.)  She said that he uses one

17   burner and two buttons on the oven, but gets confused with temperatures when cooking.  (AR

18   106.)  He takes "an inordinate amount of time" to make meals and makes a significant mess.

19   "[B]y the time he finishes cooking—Frank's kitchen is a disaster and mine too because of his

20   constantly running upstairs to get forks, knives, plates, etc. because he misplaces them as he's

21   using them."  (AR 104.)  Plaintiff said that she has to constantly remind Frank to wipe his hands

22   and must clean up the kitchens after Frank finishes cooking.  (AR 104.)

23       Frank told the ALJ "I've always stayed by myself."  (AR 174.)  He lives by himself in a

REPORT AND RECOMMENDATION
PAGE - 6

suite in his mother's basement.  (AR 108-109.)  Frank described the unit as like a mother-in-law apartment with his own kitchen and bathroom.  (AR 168.)  He has a separate entrance to his apartment but generally chooses to use their shared front door.  (AR 109.)   Plaintiff wrote that "he has never lived on his own without someone being close by." (AR 109).

According to plaintiff, Frank can manage his basic medical needs but she must help with anything that is not routine.  (AR 105.)  He can take himself to the doctor, "[b]ut that is only if it is to the clinic for his regular blood sugar work up, his high blood pressure and routine checkups. We have followed that routine enough over the years that he can do that, usually with minimal supervision."  (AR 105.)   However, she says that someone must accompany him for any appointment that requires getting new information, filling out forms, or going somewhere other than his normal clinic.  (AR 105.)  While Frank can take his medication, plaintiff must verify because she finds pills on the floor or the table, or he loses his prescription bottle.  (AR 105.) She also has to administer medication that must be taken more than once a day as he cannot remember if or when he took the medication or that he needs to take the medicine multiple times per day.  (AR 105.)

When the ALJ asked Frank if plaintiff made any important decisions for him other than paying his bills, Frank responded, "Yes, about everything."  (AR 173.)  He further explained "if anything important ever comes up I always ask her."  (AR 173.)    The ALJ found that the evidence belied Frank's testimony and showed that his mother did not provide the type of support anticipated by the regulations. (AR 18.)  However, the new evidence appears to confirm Frank's assessment of his mother's role in his life.  The evidence shows that Frank can perform basic daily functions but requires significant assistance in the more complex aspects of adult life. Plaintiff appears to facilitate and support Frank's life in many ways, from grocery shopping to

REPORT AND RECOMMENDATION
PAGE - 7

1   medical care.   This evidence contradicts the ALJ's findings and undermines the evidence

2   supporting the ALJ's conclusion that Frank is not in plaintiff's care.   Regardless of whether

3   the record before the ALJ provided substantial evidence to support the decision, the augmented

4   record before this Court no longer does. We may set aside an ALJ's decision that is not

5   supported by substantial evidence.  *See Thomas*, 278 F.3d at 954.   Here, reversal is necessary in

6   light of the new evidence.[2]

7   <u>Disposition</u>

8          The question remains whether to remand for reinstatement of benefits or further

9   proceedings.   The Court may remand for an award of benefits where:

10         the record has been fully developed and further administrative proceedings would
           serve no useful purpose; (2) the ALJ has failed to provide legally sufficient
11         reasons for rejecting evidence, whether claimant testimony or medical opinion;
           and (3) if the improperly discredited evidence were credited as true, the ALJ
12         would be required to find the claimant disabled on remand.

13   *Garrison*, 759 F.3d 995, 1020 (9th Cir. 2014).   Remand for award of benefits occurs in rare

14   circumstances.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

15   Remand for further proceedings is appropriate where "critical factual issues remain unresolved."

16   *Brown-Hunter v. Colvin*, __ F. 3d __, 2015 WL 4620123, at *1 (9th Cir. 2015).   Plaintiff

17   contends that further proceedings are not necessary because there are no outstanding issues to

18   resolve in light of the additional evidence. Dkt. 14 at 9.  We disagree.

19         When evaluating whether further proceedings would be helpful, the Court examines

20   "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual

21   issues have been resolved, and whether the claimant's entitlement to benefits is clear under the

22   applicable legal rules."  *Treichler*, 775 F.3d at 1103-04.   Here, plaintiff's letter introduced

23
           _____
           [2] Because the Court recommends reversal for consideration of the additional evidence, we need not address
           plaintiff's additional argument that the ALJ failed to meet his duty to develop the record.  Dkt. 14 at 1.

REPORT AND RECOMMENDATION
PAGE - 8

additional evidence that impacts the determination of whether Frank is "in care" as required by 20 C.F.R. § 404.348(c).   Reaching a conclusion on this issue entails evaluation of the new evidence, reconciliation of the various evidence and testimony, and new factual findings.   The responsibility for resolving ambiguity and conflicts in the evidence lies with the ALJ, not this Court.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).   Further proceedings are necessary for examination of the record as a whole and whether plaintiff is entitled to mother's benefits.

In the event of remand, plaintiff requests that the Court recommend assignment to a different ALJ. Dkt. 14 at 10.  In the Ninth Circuit, "actual bias must be shown to disqualify an administrative law judge."  *Bunnell v. Barnhart*, 336 F.3d 1112, 1115 (9th Cir. 2003.)  Plaintiff alleges no actual bias.  Instead, she requests a new ALJ due to concerns that the original ALJ had not accepted the Commissioner's finding that Frank is disabled and was unlikely to find her entitled to benefits based on her care of a disabled child. Dkt. 14 at 10. Plaintiff relies on *Sarchet v. Chater*, which recommended remand to a new ALJ because "the tone of the administrative law judge's opinion suggests that she may have an unshakable commitment to the denial of the applicant's claim."  78 F.3d 305, 309 (7th Cir. 1996).

The circumstances motivating the *Sarchet* court to recommend remand to a new ALJ differ significantly from the case at hand.  In that case, the ALJ described that plaintiff's testimony as "melodramatic," and made significant errors including "a substantial number of illogical or erroneous statements that bear materially on her conclusion," "a shaky understanding of the medical facts," and "unfounded sociological speculations."  *Id*. at 307-08.   These significant errors and the ALJ's tone caused the Court to recommend that a new ALJ hear the case on remand.

None of these issues exist in this case.  Nor does the plaintiff demonstrate an actual bias.  We see no reason to doubt the ALJ's ability to examine the new evidence and arrive at a decision properly supported by substantial evidence.

CONCLUSION

For the reasons set forth above, the Court recommends this matter should be REVERSED and REMANDED for further proceedings.  On remand, the ALJ should examine the new evidence and reevaluate whether plaintiff has a child in her care for the purposes of 20 C.F.R. § 404.340.

DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 2, 2015**.

DATED this 11th day of September, 2015.


Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 10